The first case, actually the first two cases, First Clover Leaf v. National Land Title Insurance Company and First Clover Leaf v. Bank of Edwardsville et al. Council, whenever you're ready, you may proceed. Good morning. I'm Tom Burkhardt. I represent First Clover Leaf Bank. The first case that I was advised to address is the granting of summary judgment in the case that First Clover Leaf v. National Land Title Insurance Company. This is a title insurance case, and title insurance is a little bit different than other types of insurance, but it is still governed by the same rules that apply to all insurance cases. In this case, we submit that the granting of the summary judgment at this stage in the proceeding was wrong for several reasons, but the biggest one, which there are actual questions of fact, which were in the record, that make it a granting of summary judgment at this stage in the proceedings improper. To give you, I'm sure I've got a lot to cover in a little bit of time, so I'm just going to go straight into the basic arguments that we have. The first is, I was representing First Clover Leaf Bank in this case and suddenly received an entry of appearance by a counsel in Missouri whose offices were in Missouri. I checked with my client. They were not notified that this lawyer was going to enter his appearance. The entry of appearance was a limited entry of appearance, limited solely and exclusively to defending the counterclaim that was made by the gardeners against Clover Leaf Bank, the gardeners and their entity, the Bank of Edwardsville as their land trustee. And it just took over and said, we're going to hire Mike Damon. He's going to be our guy, and that's all we're going to do. We're not going to do anything else. We're not going to take over the foreclosure proceedings. And another thing, they failed to defend the cases that were filed in St. Clair County. They just didn't. And they knew about this case well in advance. There were two proceedings, basically. One was filed in St. Clair County. That eventually was dismissed, and Judge Quito advised the gardeners and their attorneys that they needed to file that as a counterclaim in Madison County, which again was done, and again, which was not defended by National Indian Title Insurance. All they did was they had Mike Damon try and make sure that the mortgage that they insured was upheld in the foreclosure proceeding. So without notice, we get this limited entry of appearance. I'm suggesting that Rule 1.2C of the Code of Professional Conduct basically says you're not allowed to enter an appearance unless you have the consent of your client. They never received the consent of our client. Now, they're going to argue that while their contract law says that we're allowed to enter a limited appearance, it's right in our policy. And I submit to you a recent case law, well, it goes back a long way, that says that you're not allowed to write into an insurance policy. That contradicts public policy. And in that regard, and I apologize for doing this, another case that I did not cite when my briefs came to my attention that makes it somewhat easy to write the opinion here, it's the Philadelphia Indemnity Insurance Company versus Chicago Title Insurance Company case. Did you submit that to your opposing counsel? I haven't yet. Okay. I just found out. What we'd like you to do is why don't you file a motion to supplement with that case. I will. And counsel will give you an opportunity to respond. That's fine. In any event, this is a case that was a district court case. I know it's not binding on this court. Right. But it goes through the issue very neatly. It talks about this whole idea that you cannot write into a policy, that which contradicts public policy of the state of Illinois. Public policy, as you all know, is established by the statute, the Constitution, and the case law. The Pekin versus Wilson case that basically established in the American Casualty Company versus Peppers establishes a line of cases that says, you know what, this duty to defend is pretty serious, and when you have a conflict of interest, you have to get independent counsel. They didn't do that in this case. But, counsel, let me ask you this. I mean, you very well put forth these arguments in your brief, and you'll supplement it with this particular case. The question I have, and you started off with this premise, is that there are genuine issues of material fact. Right. Could you tell us what you think they are? Well, we took the deposition of, and I referred to it, excuse me, at page 23 and 24 of the brief, on page 24, there's a deposition of Ms. Lauren Jackson, who's a representative of National Anti-Drop. In it, I was asking her the exact same questions with regard to this payment of property taxes. There was $92,000 in property taxes that if they were not redeemed, would you lose the market? And I asked, we were talking about the policy language of paragraph 4B of the policy, which basically says, hold on just a moment, the company shall have the right at its own cost to do any other act which, in its opinion, may be necessary or desirable to establish the title to the estate or interest or lien mortgage as insured or to prevent or reduce loss or damage to the insured. That's condition 4B. And when I asked Lauren Jackson about that, I read that to her, and I said, do you see that? This is brief from page 24. She says, I see it. It says, do any other act, would paying the taxes qualify under that clause? And she answered the question, it could qualify. I established that. Their own testimony establishes a question of fact on that particular issue. Furthermore, we have Lauren Scharf. See, they gave us this printout, which was all the correspondence. It took some time to try and get it completed, but it took all the correspondence between the adjusters at the Home Office of National Land Title and their counsel, Mike Damian. And in part of those e-mails, Lauren Scharf was writing to counsel for this Mike Damian counsel. She says, the taxes on this property are about to be sold if they are not redeemed before mid-May. So somebody is going to have to pay those taxes so the property doesn't get sold out from under us. What I think that's establishing is that this property is not a tax lien that is a problem. They're pointing to this is excluded under our policy because we don't insure taxes after the closing. This isn't what the case is. I point that out somewhere in the brief about how the property tax law says the lien is extinguished as soon as the taxes are sold. So that exclusion doesn't even apply. But even if it did apply, it's not the lien. It's Lauren Jackson's right here. Yeah, Lauren Scharf, now Jackson, is right here saying this is a condition that's going to cause our mortgage to go away. And that fact is what I quoted before is what in the policy says they have to pay that at their cost. So those are facts which are, that I suggest are, would make the granting of a summary judgment in this particular case inappropriate at this time. Mr. Berkman, I have a question. Yes. What are the damages that you're seeking? There are several elements to the damages. Number one, the time that I spent on the case. So one of the issues that you think should be litigated is the attorney fees? Yes. Your fees were not paid when the house was sold off and all of that? The fees were paid out, and this is a nuance that I really need to get on. I'm glad you brought it up, Your Honor. The fees were paid out of the proceeds of the sale, but this language that I've just quoted says that they have the right at their own cost to make sure to prevent or reduce loss or damage to the insurer. That's me. That's us, okay? We're losing every dollar that's spent out of those proceeds. It's a loss to us because, as you'll find out later, we have a claim, a constructive trust claim, to the tune of about half a million dollars. Now, the guard has since exited the estate and left the floor, and they're not to be coming back any time soon in any event. Well, let me add, I don't think I understand. The policy says that they can do any act which, in its opinion, is desirable to establish the title to the estate. So by paying off the taxes, did they put the bank back into its first position? They didn't pay the taxes. We paid the taxes. We commanded that they pay the taxes. They refused and said we have to pay the taxes. But with the sale of the property, the taxes were paid back to the bank. Everything was paid. It was paid out of the proceeds that should have gone to pay off our debt. So even you were paid. Yes. So that's why I'm trying to understand if we have a justiciable claim is what I'm trying to understand. And that ties into the summary judgment. Right. Let me see if I can explain it better. We're $450,000 independent of the foreclosure. There's a $470,000 mortgage. There's also a $450 claim that we have against the guards, a total of close to a million dollars. For every dollar that's used up in the foreclosure litigation, otherwise my fees, okay, and who spends prosecuting that case, for every dollar that's used up there, we don't get as much here in the payment of our constructive trustees. But didn't you get payment? No. We're still owed $450,000. We've got a little bit of money from the parkers. We can figure that out. But there's still damage there. We're still owed that. And the guards still owe us that. As Judge Harrison has ruled in that case. It's kind of hard in some of the issues that are in the other cases. But it all fits together. He ruled that we were entitled to $9,000 left over. But that's all we've got. We've got $9,000 to apply to the $450,000 debt. So we're still, whatever the math turns out to be, we're short on that. And so where I'm saying the damage is occurring here is that they don't pick up the entire case. They just pick up a piece of it. And the case law says you cannot do that. If you're obligated to defend on one count, you have to defend on all counts. And in this case, they didn't do that. Well, title insurance, I said earlier, is a little bit different. The title insurance policy in this case not only requires them to defend. It actually has a clause in there that says you also have to prosecute such cases as may be necessary in order to make the insurance good, make the mortgage good. And I suggest that language required them in good conscience to take over the entire case. And they're demanding to do that, and they didn't do it. They maintain their issue of just a limited defense. And I don't think the case law supports that at all, especially recent cases. So getting back to your point, each doc, whether it's the $92,000 or I think it was $97,000, whatever the number is in brief is what it was, whether it was real estate taxes that had to be paid to preserve the mortgage and to preserve the case. Because if those property taxes did not have been paid, we all would have gone home. There would have been no foreclosure. Or it was the fees that closed-relief had to expend on me during that foreclosure pursuit. Those dollars should have been made available to me. Now, actually what happened in these cases, and this will come up a little bit later, there was the gardeners called on the bank and said, we've got to settle. And the bank called me and said, well, if they owe us this $450,000 and the $470,000 mortgage, what can we do? And that's what gave rise to the trust case. And basically they said they had a sale that they were going to make. Let's use round numbers. These aren't accurate. They said they were going to make $700,000. And I did put it in this brief. There was like a $20,000 loan to an associate bank. And there was like a $40,000 loan, and they added some interest in there, to First Constable Bank. And if that would have been paid off, that would have left on a $700,000 sale, that would have left all that proceeds to apply to the $450,000 that owed us in that sale. As it turns out, there was a settlement statement that was provided to me. It showed that the gardeners were going to net from the sale close to $125,000. I don't care whether it was $1 or $125,000. That's damage to sale. And that kind of explains how we are damaged by virtue of the fact that we have a secondary, almost like a second mortgage claim over here where the gardeners owe us this additional money. You say that once they entered their limited appearance, that expanded their obligation to represent you completely. But their contention is that no part of the policy obligates them to provide a defense to any of those four claims. My response to that would be this federal case, the very issue that you pointed out. Is that the new case? Yes. Pardon me? That's the new case? Yes. It's a 2012 case. I know, but the case has not been cited. No, it hasn't. And I apologize for that. And, in fact, the circumstances of it coming to my attention was I was working on another case. And that very issue, the Chicago Tiger contended that the insurance policy's limitation stated that it was only obligated to defend stated causes of action, so they were limited. And the issue was whether or not a person who's obligated to defend under a certain aspect of the thing must take over defense of all claims. Citing Merit and Casualty Company v. Pepper and U.S. Fidelity and Guarantee Company v. Wilkin Insulation, this district court said you have an obligation.  The policy cannot rewrite our public policy requiring the complete defense. Those cases are cited in my brief, Merit and Casualty Company v. Pepper and the Wilkin Insulation case. And it goes through the entire line of argument, citing all the state cases. That's why I'm bringing it to your attention. It basically, it almost writes my brief is what it comes down to. And it says, you know, that makes sense to me. You know, if we're going to make it the policy of the insurance companies have to defend all claims, even though one of the claims might be, for example, the intentional, non-intentional, the negligent versus intentional type of coverage in an automobile case, somebody's, or an assault and battery type of case. Cases have long established if you're obligated to defend the negligent case, you also have to defend the count that says it was intentional, even though it's clearly not covered under your policy. Same thing applies here. Title insurance can be treated no different than any other insurance. They can't write into their policy something that is against the public policy as established by our case precedents. One other thing with regard to the independent counsel, independent counsel, whether they were entitled to choose counsel for us. Policy itself says that the choice of counsel is to be subject to the right of the insurer to object for reasonable cause. We did. That's another fact in this case. It should have mediated against summary judgment of this case. We objected to them. I sent an email to Mr. Damien saying that you're to take over complete control of this case, and they never did. They insisted on their position. I suggest that position is incorrect, and it needs to be established that way so that the future title companies can't do this. They need to be told they cannot rely on the policy language that they've done so in this case. The other thing is I believe in this case that the issue of independent counsel was required. Maryland Casualty Company versus Pepper says that in a conflict situation, you're not even allowed to participate in the defense. It's taboo. It's off limits. You can't even suggest what strategy is to take place. We want to make this really defined differences there. So under those circumstances, if there's a conflict of interest, then you have to provide independent counsel. They did not do that. What is the conflict of interest? Your argument up to this point has basically been this person's appointed out of the blue. We don't like that, but they're appointed. Now that they're appointed, they're supposed to take over the total case. That demand on your insurer is refused. You're at odds as to the existence and scope of the counsel, but where is the conflict of interest other than the scope of the counsel's duties? The conflict of interest arises by virtue of the fact that we've got this second mortgage, if you want to call it that, this judgment that we're owed money. They borrowed money and they owe us a half million dollars in addition to the mortgage. Now, they just insured the mortgage. And the conflict arises by virtue if they get the mortgage declared to be invalid or if Gardner's successful and it's declared to be invalid. And in my brief, I cite this proof of facts on title insurance where this author goes into this and explains the conflict of interest. If it's invalid, they owe us $470,000, the case value of the policy. Now, they're... Go ahead and finish, sir. Then they're relegated to a claim. They stand in our shoes. They're then relegated to our position. Our position in their shoes would be to go after the Gardners, okay, because the money was given to them. But if the mortgage is declared to be invalid, it can't be foreclosed. There is damage to it, but they have a money-having receipt claim against the Gardners. They're no longer in a priority position because the mortgage has been declared invalid. We have two mortgages, and our claim, which is the basis of less pendants, which we know the fight of the world, we've got this plan out here, is first in time at the reporter's office. So they have a conflict. If they can't win and have that mortgage declared to be invalid, then we're actually ahead because we get our money from them for the mortgage insurance, $470,000, and then after the sale, there's a lot more left over in equity that can be applied to our $470,000. That's the money conflict of interest. Okay. Your time has expired. Yes. Thank you, counsel. Thank you. Would there be five minutes? Yeah, I think you'll get rebuttal. All right. And counsel will give you a couple extra minutes, too. Thank you. Excuse me. May it please the Court. Counsel, my name is Carl Tenney, T-E-N-N-E-Y. I represent National Land Title Insurance Company in this case. In December of 2003, we, the title company, entered into a contract, more specifically an insurance policy. We issued our insurance policy to cover the validity, if you will, of the mortgage of First Global Relief Bank. By that contract, by that insurance policy, we promised for a premium they paid us to uphold that mortgage and fight any claims against its validity. Sometime later, when First Global Relief initiated a foreclosure action to foreclose on the mortgage we insured, there was a challenge made by a junior in-time mortgage, a second mortgagee, and it had to do with the technical aspects of the execution of the mortgage we insured. So the second mortgagee says, no, First Global Relief, your mortgage is invalid. As soon as we are on notice of that, we hire counsel to defend that attack made by the junior or second mortgagee. That mortgagee was owed roughly $47,000. We paid $47,000 to make them go away. So the challenger comes in, we come to the rescue, we slay the challenger, and then the foreclosure case proceeds without that hiccup, if you will, of the second mortgage. There's a big sale to an independent third party. Everybody gets their money back, even we got our money back. First Global Relief got every bit of its principal, every bit of its interest, every bit of the attorney's fees that were awarded by the court. There was some dispute about what fees were properly awarded out of this sale, but there was an amount that was determined by the court, and First Global Relief's lawyer got that whole amount. There was reference made to these real estate taxes for the years 2005 through 2007, I believe. Of course, our policy was issued in 2003. Express had provided that we are not responsible for real estate taxes that might come up later, but with regard to those taxes, we did not pay them. We could have. And the language that Mr. Burkhart refers to in our policy gives us that right. It's essentially the same language that we relied upon, if you will, when we paid off the junior mortgagee. We could have done that, but nothing obligates us to do that. We're not required to do that by the terms of the policy. But in any event, there was enough money from the sale, and I'm sorry, let me back up. What I forgot to say was when we did not pay it, First Global Relief did. So then there was a sale, and out of the proceeds of the sale, they even got the $97,000 or whatever it was back that they paid for the taxes. So, you know, in a nutshell, we have a contract. Did we do everything we were supposed to do? We say yes. We don't have a conflict of interest. Our role, our commitment was to defend the validity of that mortgage. They had the same interest. They argued all the way through the whole case that the mortgage was valid. They never argued, Mr. Burkhart in particular, who represents First Global Relief, never, it does not appear in the record before this court, I know that, that Mr. Burkhart ever argued against the validity of the mortgage. So we have had identical interests, and that is to support the validity of the mortgage. We were successful in doing that. Everybody got paid. What about his claim that he still owed attorney fees? I didn't understand if that was his claim, because he got… Well, that's what I thought. He had gotten paid, but he's saying that had you come in in a different way to defend, that the bank wouldn't have had to use him, and yet part of what Mr. Burkhart was doing was a foreclosure, right? Sure. The litigation that brings us all here was the foreclosure case that the bank prosecuted. Do you believe that there was any obligation by the insurance company to participate on the foreclosure? No. And, you know, we cite the specific language from our policy that, let's see, shall provide a defense of and insure only unto those stating causes of action alleging a defect, lien, or encumbrance. I believe that the policy language allows us to enter, in effect, the limited appearance, which is what we did for defense of these claims. Nothing in the policy obligates us to prosecute the foreclosure case. So what I'm trying to figure out is where the damages are. What are the issues still left in the case? I don't think there are any, and I think that's why we're here. I think that's why the trial court grants are rejected. There's no issue about breach of contract because we did everything we said we would do. We did everything that we're obligated to do on the policy. Except maybe pay the real estate taxes. Maybe you could have done that, but that's been cured because they got the money, right? Right. So, I don't really have anything to add. I don't have to answer any questions. I get this point of order, you know, I can't put so much thought into writing anything. I can't say anything.  Thank you, counsel. I want to try and remedy, because I'm worried I haven't explained thoroughly or sufficient enough to show the damages in this case. Mr. Burkhart, let me make it very clear. Our jurisdiction only goes to justiciable claims. Right. I'm trying to see if there's still a claim left. Right. And I think that might have been a mistake that neither Mr. Tinney nor the trial court saw in this case, and they just jumped to the conclusion, oh, everybody got paid out of sale. That's not exactly right, and here's why. There's a mortgage in Illinois, and it is a reporting state, first in time. So, you've got a mortgage, whatever you need or whatever. Whatever date you get to the reporter's office, anybody who gets to the reporter's office after you is subordinate to you. You get paid first from the sale proceeds. With that in mind, we have a $470,000 mortgage, and by the way, we're here not because of the taxes weren't paid later on. We're here because it's admitted that the title company boxed the execution. That's fact. It suggests it shouldn't have been a summary judgment in this case, too. But in any event, to regain the focus, you have a $470,000 mortgage. It's in issue. It's boxed execution. Okay, fine. Then you have, first, Collinsville, the bank's claim. They're second. Then you have the Associated Bank's claim. They're third. Then there was a mechanic's claim for some painting that was done, a Gabriel painting, I think. It was fourth. Who's fifth? First, Cloverleaf Bank, for their $450,000 debt. Why? We recorded a list of pendants. That was notice to the world that we have this claim. It's still unliquidated, but if we win, we're fifth. Okay? Now, that makes it so that if the mortgage is declared to be in balance, and that creates the issue, the whole issue. Well, let me back up. Because of the boxed execution, that gives rise to the gardeners being able to challenge the mortgage. It increased the amount of attorney's fees that were necessary in order to defend the mortgage. Mortgage foreclosure is a relatively simple procedure that should take no more than 13 months. It took a couple of years. The amount of attorney's fees it took over and above what it would normally have taken to just foreclose the mortgage without the defense of the gardeners is what took away from the equity in the house. For each dollar that's evaporated by virtue of attorney's fees going to have to defend the gardeners, because of a botched execution, number five is getting screwed. And we're number five. That's how we're being damaged. There's less equity to pay the judgments that we have under our claim for the list of pendants, and therefore our damages. For every dollar that's spent over here, whether it's me or whether it's independent counsel that's not paid for by them, and they don't pay that person, we're losing money. Just like the taxes. It's easy to suggest, yes, you got paid out of the sale person. What if you wouldn't have had to pay those taxes? What if that was a cost necessary to preserve the mortgage? Did they, independent of the policy limits, under the terms of the policy, they were required to pay? And they were. That's our point. Then I've got $97,000 more dollars over here that I can have applied to my judgment. That's number five, the list of pendants. So that's why it was a justiciable claim, and that's why summary judgment was improper in this particular case. The other issue, as Andrew Butler was, the argument that, hey, we paid the challenger, we removed the challenger, is no good for reason of the gardeners. They were always there going to raise the exact same challenge. These guys knew as early as April 1st of 2009 that, by email from Mr. Yersurson, with a proposed complaint, they knew that the exact same claims that were raised by First Collinsville Bank could be raised by Associate, could be raised by Gabriel, and sure as heck were going to be raised by the gardeners. That's all I have unless there's questions of counsel. I don't believe there aren't. Thank you, counsel. Thank you for your time. We appreciate the briefs and arguments of counsel, and we will take the case under advisement.